**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JERRY JOHNSON,<br><br>*Plaintiff,*<br><br>v.<br><br>LA ACADEMIA PARTNERSHIP CHARTER SCHOOL, and AIDALIS LOPEZ, Individually and in Her Official Capacity as Director of Operations,<br><br>*Defendants.* | :<br>:<br>:<br>: CIVIL ACTION<br>:<br>: NO.: ________________________<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## CIVIL ACTION COMPLAINT

Plaintiff Jerry J. Johnson, by and through his attorneys, Garen Meguerian, Attorney at Law, LLC, and Zeff Law Firm,LLC, files this Complaint and alleges as follows:

## I. PRELIMINARY STATEMENT

1. This is an action for employment retaliation and race discrimination. Plaintiff Jerry J. Johnson, a Black male, was employed by La Academia Partnership Charter School for approximately seven years as Director of Sports / Athletic Director and Head Basketball Coach.

2. After his minor son was the victim of a racially motivated assault at the School, Plaintiff Johnson, through counsel, sent a demand letter asserting civil rights claims.

3. Within six weeks, the School began a campaign of escalating adverse employment actions that culminated in Plaintiff Johnson's termination.

4. The stated basis for his termination, failure to obtain a certification that Pennsylvania does not require, is pretextual.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4). This Court has jurisdiction over the Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3). Plaintiff received a Right to Sue letter from the EEOC and files this action within 90 days thereof.

6. This Court has supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b).

8. Plaintiff filed a Charge of Discrimination with the EEOC, cross-filed with the Pennsylvania Human Relations Commission, alleging race discrimination and retaliation. The EEOC issued a Right to Sue letter, and this action is timely filed within 90 days of receipt.

## III. PARTIES

9. Plaintiff Jerry J. Johnson ("Johnson") is a Black male residing at 109 Lantern Lane, Lancaster, Pennsylvania 17602.

10. Defendant La Academia Partnership Charter School ("La Academia") is a charter school located at 30 North Ann Street, Lancaster, Pennsylvania 17602, authorized by the School District of Lancaster. La Academia employs approximately 50 persons and is an employer within the meaning of Title VII and the PHRA.

11. Defendant La Academia is a charter school established pursuant to 24 Pa. S.C. 1703-A.

12. Defendant La Academia is a charter school that is part of the public school system, authorized to effectuate its duties pursuant to state law.

13. Defendant Aidalis Lopez ("Lopez") serves as Director of Operations at La Academia. She was Johnson's direct supervisor during the relevant period. She is sued individually for claims arising under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. At all times relevant hereto, she acted under color of state law.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff Johnson's Employment

14. Plaintiff Johnson was employed by La Academia from approximately August 2019 until his termination on July 31, 2026, a period of approximately seven years.

15. Plaintiff Johnson served as Director of Sports / Athletic Director and Head Basketball Coach. He built the School's athletic department from the ground up, leading the basketball program to state tournament appearances.

16. During his seven years of employment, Plaintiff Johnson was never required to obtain any specific PDE certification as a condition of employment. Pennsylvania does not require a PDE Athletic Director certification for the position Johnson held.

17. Plaintiff Johnson received no formal disciplinary action requiring certification as a condition of continued employment prior to the events described herein.

### B. The Protected Activity

18. Plaintiff Johnson's minor son, "J.", was a student at La Academia.

19. On March 6, 2026, J. was the victim of a racially motivated assault: another student repeatedly stabbed him in the face with a pen while screaming racial slurs and death threats.

20. The assault was witnessed by school employees.

21. On or about April 14, 2026, Plaintiff Johnson, through counsel, sent a demand letter regarding Plaintiff's son to La Academia asserting claims of racial discrimination under Title VI,

§ 1983, and related laws. The demand letter documented pervasive racial harassment at the School and the School's deliberately indifferent response.

22. The demand letter constitutes protected activity under Title VII, § 1981, and the PHRA.

**C. The Retaliatory Campaign**

23. Beginning approximately six weeks after the demand letter, La Academia subjected Plaintiff Johnson to a series of escalating adverse employment actions:

24. **Performance Improvement Plan (May 28, 2026).** For the first time in seven years, the School placed Johnson on a PIP and required him to enroll in a certification program in Sports Management, Physical Education, or a related field. This certification requirement had never been imposed during his prior years of employment. Pennsylvania does not require such certification for the Athletic Director position.

25. Upon information and belief, the School demands unnecessary certifications from its teachers to either compel them to resign or to justify the termination of their employment.

26. **Stripping of Resources (June 3, 2026).** On the last day of the school year, the School confiscated Plaintiff Johnson's laptop, key fob, and building access, for the first time in eight years. The summer months are the most critical period for an Athletic Director. Removing these resources made it impossible for Johnson to perform his duties.

27. **Written Warning (June 5, 2026).** The School issued a written warning for allegedly failing to meet deadlines related to returning items and completing a PIMS report. This warning was pretextual: Plaintiff Johnson had submitted all required data by the deadline via email, and the items the School claimed were outstanding required access to systems the School had confiscated two days earlier.

28. Plaintiff Johnson communicated this fact to Lopez and Dr. Rau repeatedly via email. Rather than restore his access, the School issued the warning, disciplining Johnson for a failure the School itself caused.

29. **Exclusion from Communications (Summer 2026).** Plaintiff Johnson was excluded from school-wide communications sent to other staff, including back-to-school professional development schedules. He learned of these communications only because a colleague forwarded them.

30. **Compressed Deadlines (June to July 2026).** The School imposed accelerated deadlines for certification enrollment. When Johnson submitted enrollment documentation with the NIAAA on July 23, 2026, ***before the stated deadline***, he received no response or acknowledgment.

31. **Termination (July 31, 2026).** The School terminated Plaintiff Johnson's employment, citing his alleged failure to enroll in a certification program.

## D. The Termination Was Pretextual

32. The stated basis for Plaintiff Johnson's termination is pretextual, including for the following reasons:

33. Pennsylvania does not require a PDE Athletic Director certification for the position Plaintiff Johnson held. The School's insistence on this certification had no basis in state law or prior practice.

34. Plaintiff Johnson submitted NIAAA enrollment documentation on July 23, 2026, before the stated deadline. The School did not respond or acknowledge receipt.

35. After communicating exclusively by email throughout the summer, the School switched to telephone calls during a period when Johnson was out of the country and unable to receive calls, then cited his failure to return those calls as justification for termination.

36. Throughout the summer, Plaintiff Johnson repeatedly informed Lopez and Dr. Rau via email that he could not complete assigned tasks because the School had confiscated his work computer and revoked his system access. Rather than restore access, the School continued to issue directives requiring those systems, then cited non-compliance as justification for discipline and termination.

37. Upon information and belief, Defendant Lopez does not hold a college degree, yet she served as Plaintiff Johnson's supervisor and drove the termination process based on his alleged failure to obtain a certification that the state does not require.

38. The letter terminating Plaintiff Johnson's employment, signed by Defendant Lopez, states no reason for Johnson's termination, despite the elaborate paper trail the School constructed over the preceding two months purportedly documenting performance deficiencies and certification non-compliance. The letter also requests that Plaintiff Johnson return property that the School had already confiscated from him on June 3, 2026. Plaintiff Johnson did not receive the termination letter until August 3, 2026.

**E. Defendant Lopez's Retaliatory Motive**

39. Defendant Lopez failed to adequately discipline the student who assaulted Johnson's son J.

40. Defendant Lopez has a direct interest in undermining the claims asserted in the demand letter.

41. Further, Defendant Lopez's grandson was one of three students identified as leading racial slur chants against Sharon Walker, a Black teacher who resigned in December 2025. Defendant Lopez thus has a familial connection to the broader pattern of racial discrimination documented in the demand letter.

42. During her investigation of the assault on J., Defendant Lopez asked Plaintiff Johnson: "Are you doing this because you are in jeopardy of losing your job?", improperly conflating Johnson's advocacy for his son with his employment status and suggesting the School was already contemplating his termination.

43. Defendant Lopez described the stabbing of J. as "only a scratch" when speaking with a former teacher, demonstrating her active minimization of the racial violence at the center of Plaintiff Johnson's demand letter.

44. Following the assault on Plaintiff's son and in anticipation of Plaintiff Johnson's claims, Defendant Lopez told Board Chair Chris Boyd words to the effect that if Jerry sues, Boyd could no longer speak with him, directing a Board member to sever communication with an employee who was exercising his right to oppose discrimination.

45. This statement demonstrates Defendant Lopez's awareness that Plaintiff Johnson's advocacy was protected activity and her intent to retaliate by isolating Johnson from institutional support.

## F. Race Discrimination

46. In addition to retaliation, Plaintiff Johnson was subjected to race discrimination throughout his employment, including: being held to standards not applied to non-Black employees; being scrutinized for vendor relationships with a Black-owned apparel company while

non-Black vendor relationships were not questioned; salary reductions; denial of annual raises; and denial of dual enrollment educational benefits that were provided to children of other families.

47. The pattern of disparate treatment, culminating in Johnson's termination, reflects race-based animus.

## V. CAUSES OF ACTION

### COUNT I
### Retaliation in Violation of Title VII
### 42 U.S.C. § 2000e-3(a)
### (Against La Academia)

48. Plaintiff incorporates all preceding paragraphs.

49. Plaintiff Johnson engaged in protected activity by opposing racial discrimination through the demand letter.

50. La Academia subjected Plaintiff Johnson to adverse employment actions, including the PIP, resource stripping, written warning, exclusion, and termination.

51. The temporal proximity between the demand letter (April 14, 2026) and the initiation of adverse actions (May 28, 2026), approximately six weeks, supports an inference of causation. The pretextual nature of the stated reasons confirms retaliatory intent.

52. As a direct result, Johnson suffered lost wages, benefits, emotional distress, and other damages.

### COUNT II

### Retaliation in Violation of 42 U.S.C. § 1981
### (Against La Academia and Lopez, Individually)

53. Plaintiff incorporates all preceding paragraphs.

54. Plaintiff Johnson engaged in protected activity by opposing racial discrimination. La Academia and Defendant Lopez retaliated against him through the adverse actions described herein. Lopez personally drove the retaliatory campaign as Johnson's supervisor, imposing the PIP, stripping resources, issuing compressed deadlines, switching to phone communications when Johnson was abroad, and executing the termination.

55. As a direct result, Plaintiff Johnson suffered lost wages, benefits, emotional distress, and other damages.

## COUNT III

**Retaliation in Violation of 42 U.S.C. § 1983**
**First Amendment and Equal Protection**
**(Against La Academia and Lopez, Individually)**

56. Plaintiff incorporates all preceding paragraphs.

57. Defendant La Academia is a state actor, acting under the color of state law.

58. As a charter school employee, Plaintiff Johnson is a public employee entitled to protections under the First Amendment of the United States Constitution.

59. Plaintiff Johnson's demand letter was protected speech and an exercise of his right to petition the government for redress of grievances under the First Amendment.

60. Plaintiff Johnson also engaged in conduct protected by the Equal Protection Clause by opposing racial discrimination against his son and other Black students.

61. La Academia and Defendant Lopez retaliated against Plaintiff Johnson for exercising these constitutional rights by subjecting him to the adverse actions described herein, culminating in his termination.

62. Plaintiff Johnson seeks injunctive and other equitable relief against La Academia for violations of his First Amendment rights.

63. Plaintiff Johnson seeks equitable relief and compensatory damages against Defendant Lopez, individually.

64. As a direct result, Plaintiff Johnson suffered lost wages, benefits, emotional distress, and other damages.

**COUNT IV**

**Race Discrimination and Hostile Work Environment in Violation of Title VII**
**42 U.S.C. § 2000e-2**
**(Against La Academia)**

65. Plaintiff incorporates all preceding paragraphs.

66. Plaintiff Johnson is a member of a protected class. He is Black. He was qualified for his position, having performed it successfully for seven years. He was subjected to adverse employment actions, including termination. Non-Black employees were treated more favorably, including receiving accommodations for the same certification requirement used as the pretext for Johnson's termination.

67. La Academia's stated reason for termination is pretextual, as detailed herein.

68. La Academia created and fostered a hostile work environment based on race and retaliation.

69. As a direct result, Johnson suffered lost wages, benefits, emotional distress, and other damages.

**COUNT V**

**Retaliation and Race Discrimination and Hostile Work Environment**
**Pennsylvania Human Relations Act, 43 P.S. § 955(d) and (a)**
**(Against La Academia and Lopez)**

70. Plaintiff incorporates all preceding paragraphs.

71. La Academia and Lopez retaliated against Plaintiff Johnson for engaging in protected activity, created a hostile work environment, and discriminated against him on the basis of race, in violation of the PHRA.

72. As a direct result, Plaintiff Johnson suffered lost wages, benefits, emotional distress, and other damages.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against all Defendants and the following relief:

(a) Reinstatement to his former position, or in the alternative, front pay;

(b) Back pay with benefits from the date of termination;

(c) Compensatory damages for emotional distress, humiliation, and loss of professional reputation;

(d) Punitive damages against Defendant Lopez;

(e) Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

(f) Pre-judgment and post-judgment interest;

(g) Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

2026.09.24
09:18:56 -04'00'

Garen Meguerian, Esquire
PA ID No. 78588
Garen Meguerian, Attorney at Law, LLC
21 Industrial Boulevard, Suite 201
Paoli, Pennsylvania 19301
(610) 550-8042 | gm@garenmlaw.com

Gregg Zeff, Esquire
Zeff Law Firm, LLC
100 Century Parkway, Suite 160
Mt. Laurel, New Jersey 08054
(856) 778-9700

*Attorneys for Plaintiff*
Dated: __________________, 2026